# Exhibit B

 An official website of the United States government
Here's how you know



# FOIA.gov

MENU

**Thank you for visiting FOIA.gov, the government's central website for FOIA.** We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 2994171

# Success!

## Your FOIA request has been created and is being sent to the Office of the Secretary of War and Joint Staff.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

## Contact the agency

Pamela Andrews, Deputy Chief

1-866-574-4970

whs.mc-alex.esd.mbx.osd-js-foia-requester-service-center@mail.mil

FOIA Requester Service Center

866-574-4970

OSD/JS FOIA Requester Service Center, Office of Freedom of Information

1155 Defense Pentagon
Washington, DC 20301-1155

whs.mc-alex.esd.mbx.osd-js-foia-requester-service-center@mail.mil

# Request summary

Request submitted on **June 26, 2026**.

The confirmation ID for your request is **2994171**.



The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

# Contact information

**Name**

James Dale

**Mailing address**



New York, NY 10010

United States

**Phone number**

(646) 402-5902

**Email**

isaac@parklaw.org

# Your request

This FOIA request asks for records showing what happened around that agreement and how it is being carried out: what Scouting America committed, certified, or reported to the Department; how the Department is measuring compliance; how the parties have interpreted the agreement's operative terms; and why the agreement and related implementation records have been treated as nonpublic. For this request, please search for records created or received from January 20, 2025, through the date of your search. I request the following records: 1. Scouting America's commitments and compliance submissions. The submissions Scouting America made to the Department under the Memorandum—including any implementation plan, side letter or supplemental understanding, compliance self-certification, evidentiary or audit submission, and progress report, including any prepared for or submitted in connection with the Department's six-month review. 2. The Department's implementation, monitoring, and review. The criteria, rubric, checklist, schedule, or reporting instructions the Department adopted to monitor Scouting America's compliance with the Memorandum or to conduct the six-month review, including any definition of "substantial progress." This category includes the Department's assessments, recommendations, or decision memoranda on whether federal support should be continued, conditioned, reduced, suspended, or terminated based on that compliance, including any record of the six-month review's outcome. If the Department has not yet adopted review criteria, the records establishing the criteria now in development are responsive. 3. Public messaging and congressional responses. The records preparing, clearing, or authorizing the Department's public statements describing the Memorandum, including the internal clearance and coordination records for the February 27 war.gov announcement article and the Secretary's accompanying video. This category includes the Department's communications with members of Congress or congressional committees about the Memorandum or about the Department's oversight of Scouting America. 4. Federal support at stake and support decisions (10 U.S.C. § 2554). The records identifying the nature, value, or approval status of federal logistical support requested by or provided to Scouting America in connection with the Memorandum. The records addressing

Department support for the 2026 National Scout Jamboree—including personnel, medical, transportation, or infrastructure support—and whether that support was treated as governed by 10 U.S.C. § 2554 or conditioned on compliance with the Memorandum. This category includes any record documenting the Department's decisionmaking to withdraw, reduce, or condition installation access, base use, or enlistment pay grade benefits for Scouting America. 5. Nonpublic treatment and release handling. Records reflecting any decision, request, or agreement by the Department or Scouting America to keep nonpublic the Memorandum, the submissions and implementation records described above, or the support condition records—including any confidentiality designation, submitter notice or pre release review agreement, and any written legal rationale for withholding these materials. If any category would return a large volume of records, please contact me before processing it, and I will prioritize, sample, or narrow it by office, custodian, date, or search term. If any category is unclear, please contact me before denying or narrowing it. I have attached as additional information a PDF of the entire FOIA request, for convenience.

---

## Additional information

2026-06-26 Second FOIA Request vF.pdf

---

## Fees

**What type of requester are you?**
media

**Fee waiver**
yes

**Fee waiver justification**
I request a waiver of all assessable fees under 5 U.S.C. § 552(a)(4)(A)(iii) and 32 C.F.R. § 286.12(l). Disclosure satisfies the public-interest factors in 32 C.F.R. § 286.12(l)(2): First, the records would shed

light on identifiable government operations and activities—how the Department uses federal support, personnel, installation access, recruiting and community-engagement benefits, statutory Jamboree authority, and public messaging in relation to a private youth organization. Second, disclosure is likely to contribute significantly to public understanding. The records are not available to the public in the same or a substantially identical form: the signed agreement has not been released, and neither have Scouting America's compliance submissions, the Department's review criteria, the approved public account or any Scouting America correction, the headquarters support decisions, the parties' interpretive communications, or the nonpublic-treatment records. I will use editorial judgment to analyze the records and publish about them for a public audience. Third, I have no commercial interest in the records. I seek them to inform public debate about government support, the conditions attached to that support, and the Department's public account of its agreement with Scouting America. I also ask to be treated as a representative of the news media for fee purposes. In any event, the fee waiver does not depend on that classification. If the Department denies a fee waiver or news-media status, please explain why. To avoid delay, I am willing to pay up to $100 if a waiver is denied, but please notify me before incurring fees above that amount.

**The amount of money you're willing to pay in fees, if any**
$100

---

# Request expedited processing

**Expedited processing**
yes

**Justification for expedited processing**
I request expedited processing of this request under 5 U.S.C. § 552(a)(6)(E) and 32 C.F.R. § 286.8(e)(1)(i)(B). Because review of an expedited-processing determination is confined to the record before the agency, 5 U.S.C. § 552(a)(6)(E)(iii), I make my full showing here and certify its factual representations below. A. I am a person "primarily engaged in disseminating information." A requester who is not a full-time member of the news media must show that information dissemination is his "primary professional activity or occupation, and not an incidental or secondary activity," though it "need not be the requester's sole occupation." 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 286.8(e)(3). The inquiry is into the nature of the requester, not the particular request, Cause of Action v. FTC, 799 F.3d 1108 (D.C. Cir. 2015), and it turns on a demonstrated record of work: courts regularly find that reporters and members of the media qualify, Landmark Legal Found. v. EPA, 910 F. Supp. 2d 270, 275 (D.D.C. 2012),

and the category reaches individuals—not only news organizations—who write and publish for a public audience, Liberman v. U.S. Dep't of Transp., 227 F. Supp. 3d 1 (D.D.C. 2016); Long v. DHS, 113 F. Supp. 3d 100 (D.D.C. 2015). Posting to a public website is itself distribution to an audience, with no minimum-audience requirement, Cause of Action, 799 F.3d at 1147–48, as is distribution by email to subscribers, EPIC v. U.S. Dep't of Defense, 241 F. Supp. 2d 5 (D.D.C. 2003). I meet that standard. Disseminating information to the public—through my writing, commentary, and speaking—is one of my primary professional activities, not an incidental or secondary one. For more than a decade I have written and published opinion essays and commentary for general-audience national outlets, including for the New York Times, Washington Post, Los Angeles Times, and TIME. My published works on the subject of this request include: • SCOTUS Protected the Scouts' Right to Exclude Me—And Their Right to Be Inclusive, TIME (Mar. 26, 2026) • He Said, "Over My Dead Body." I'm the Gay Boy Scout Who Finally Went Back, Prism & Pen (Medium) (May 28, 2026) • The Boy Scouts Can Do a Good Turn Finally, N.Y. Times (May 19, 2017) • I Am a Gay Boy Scout: The Policies Remain Wrong, TIME (May 22, 2015) • Scouting's Misstep, L.A. Times (May 22, 2013) • Why Did I Challenge the Boy Scouts' Anti-Gay Policy? Because I Am a Loyal Scout, Wash. Post. (Feb. 8, 2013) • The Boy Scouts Deserve More Than a Copout, Huffington Post (Feb. 6, 2013) • Boy Scouts' Discrimination Is Killing the Organization, N.Y. Times (July 19, 2012) I also publish through my personal site, jamesrdale.com, distributing essays and commentary to subscribers on a continuing basis. Recent posts include: • Hegseth Calls it "Woke." I Call It Scouting., Substack (Apr. 30, 2026) • The Script Never Changes, Substack (Mar. 18, 2026) My writing on the exact subject of this request is current and continuing: in 2026 alone I published the TIME essay (Mar. 26) and the Prism & Pen essay (May 28) above, along with the two jamesrdale.com posts (Mar. 18 and Apr. 30). In short, I affirm that researching, authoring, and delivering public commentary is a primary professional activity to which I devote my working time and intellectual effort. While I also am a public speaker and activist, these distinct pursuits do not displace my public writings and, if anything, directly feed my primary professional footprint as a public commentator. I am not a salaried employee of any advocacy organization. Researching, authoring, and delivering public commentary is my principal professional output. B. There is a particular urgency to inform the public about these records. A "compelling need" exists where records are "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Urgency turns on whether the request concerns a matter of current exigency to the public, whether delay would compromise a significant recognized interest, and whether the request concerns federal government activity. Al-Fayed v. CIA, 254 F.3d 300, 310 (D.C. Cir. 2001). The Department's regulation recognizes that "the existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic." 32 C.F.R. § 286.8(e)(3). The subject must be "a currently unfolding story," Al-Fayed, 254 F.3d at 310, and the requester should identify "a specific end point at which the information's value drops off altogether—i.e., the conclusion of a process such as a legislative vote, . . . court case, or the like," Heritage Found. v. EPA,

2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023); cf. Rolling Stone, LLC v. U.S. Dep't of Justice, 739 F. Supp. 3d 237, 244 (S.D.N.Y. 2024) (denying expedition for want of such an end point). Each factor is met. The request concerns a major federal action: the Department's conditioning of congressionally authorized support for a youth organization of roughly one million members on that organization's membership and program policies. The two signatories have described the agreement to the public in directly contradictory terms. In an official announcement and accompanying video on February 27, 2026, the Secretary stated that membership would be "based solely on biological sex at birth and not gender identity," that "the application must match the applicant's birth certificate," and that "biological boys and biological girls will not be permitted to share intimate spaces, including toilets, showers and tents." Scouting America's chief executive, by contrast, told the Associated Press that "[w]e have transgender people in our program, and we'll have transgender people in our program going forward," and Scouting America told its members that its commitment "to welcome and serve all youth" is "unwavering"; council guidance has stated that birth certificates "will not be required." Both accounts cannot be true. The public cannot evaluate what the Department demanded—or how it is enforcing the agreement—without the records sought here. This is a currently unfolding story. The agreement is operating as applied policy now: a merit badge required for Scouting's highest rank was discontinued effective February 27, 2026; a registration-fee waiver for military families took effect June 1, 2026; and standardized facilities guidance issued in March 2026. The matter has drawn sustained national reporting and is the subject of independent FOIA requests for the same records and written inquiries from members of Congress. My prior FOIA request seeking the text of the Memorandum itself has drawn coverage from the New York Times. Delay would compromise a significant recognized interest, because the records' value will diminish on dates fixed by the government's own policy. Scouting America's National Jamboree is scheduled for July 22–31, 2026— the event at which the Department's congressionally authorized logistical support is deployed and to which the agreement's terms directly apply. And the Secretary has stated that the Department will conduct a six-month review of Scouting America's "substantial progress" on or about August 27, 2026, when it will decide whether to continue its support. The public is entitled to scrutinize these events with the content of the records in hand. C. Expedited processing would not disrupt orderly FOIA administration. The availability of expedited processing is guided by the concern that "prioritizing all requests would effectively prioritize none." Al-Fayed, 254 F.3d at 310. Where that concern is absent, the agency processes the request "as soon as practicable." 32 C.F.R. § 286.8(e)(4). That concern is absent here. This request is deliberately limited: it seeks final or operative records rather than every underlying file; it is confined to a small set of headquarters offices and a fixed date range; and it asks the Department to contact me to prioritize or narrow any category that would return a large volume, and to release records on a rolling basis. Several categories—the Department's review criteria, its cleared public-affairs guidance, and its headquarters support decisions—are discrete records that can move quickly. Granting expedition advances a focused, time-sensitive request at modest cost and disadvantages no other requester.

# Terms of service

## Terms of Service
yes



### CONTACT

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit ☐ CC3.0

| FREQUENTLY ASKED QUESTIONS

| DEVELOPER RESOURCES

| AGENCY API SPEC

| FOIA CONTACT DOWNLOAD

| FOIA DATASET DOWNLOAD

| ACCESSIBILITY

| PRIVACY POLICY

| POLICIES & DISCLAIMERS



6/26/26, 7:59 PM

Save MD

Open in archive.is

JUSTICE.GOV

USA.GOV ↗